

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Christine Goo*
*Assistant United States Attorney*
*Christine.Goo@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4924*
*MAIN: 410-209-4800*
*FAX: 410-962-0717*

November 18, 2021

The Honorable Paul W. Grimm
United States District Judge
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

      Re:    *United States v. Davante Harrison*, Criminal No. CCB-19-0575

Dear Judge Grimm:

      We write in advance of the sentencing hearing for Defendant Davante Harrison, currently scheduled for November 30, 2021. The Government believes a sentence of 180 months' imprisonment is sufficient but not greater than necessary to meet the aims of 18 U.S.C. § 3553(a).

## I.    FACTS OF CONVICTION

      On August 20, after a four-day trial, a jury convicted Mr. Harrison of a drug trafficking conspiracy involving 400 grams or more of a fentanyl mixture and 100 grams or more of a heroin mixture (Count One); possession with intent to distribute heroin (Count Two); possession of a firearm by a prohibited person (Count Three); and possession of a firearm in furtherance of a drug trafficking crime (Count Four). The evidence presented at trial supported the following:

      In October and November of 2019, law enforcement officers investigated a drug conspiracy involving Davante Harrison and his co-defendant Christopher Jerry. Using phone and vehicle location data (as permitted by court orders), investigators observed Mr. Harrison travel to various locations related to his drug trafficking. Early in October, Mr. Harrison was surveilled traveling to 111 W. Heath Street, Baltimore, Maryland and staying there for a short period of time. Mr. Harrison then went to the Rosedale and Golden Ring Park areas in Baltimore County, Maryland, where he made short stops and met with unknown individuals. Investigators observed some of these meetings occur inside the rental vehicle that Mr. Harrison drove. The location and duration of these meetings were consistent with drug trafficking activity. After these short stops, Mr. Harrison then traveled to Delaware Park Casino.

      Investigators believed that Mr. Harrison, using 111 W. Heath Street as a stash location for his narcotics, would then meet with drug customers in Rosedale, Maryland, and then travel up to the Delaware Park Casino with his drug proceeds. As reflected in casino video at Delaware Park Casino on September 22, 23, 25, and November 13, 19, and 21, 2019, Mr. Harrison arrived at the casino on two occasions with Christopher Jerry and placed sports bets with large amounts of U.S.

currency. The casino surveillance video also showed Mr. Harrison driving two different rental vehicles. On November 13, 2019, he traveled from Delaware Park Casino to Baltimore City, again through Baltimore County, and then back to 111 W. Heath Street. Investigators then observed the Defendant in the living room and kitchen area of Apartment 513 in 111 W. Heath Street.

On November 25, 2019, FBI investigators executed search and seizure warrants at multiple locations. That morning, Mr. Harrison's cellphone was in the vicinity of 10310 Gelding Drive in Cockeysville, Maryland. When Mr. Harrison exited the building while wearing a Dolce and Gabbana "fanny pack," he was detained without incident. Equipped with a warrant for Mr. Harrison's person, investigators recovered from inside of the Dolce and Gabbana bag $9,277.00 and a Glock 23 .40 caliber pistol, bearing serial number WKE393, loaded with an extended magazine containing 17 rounds including one in the chamber. Mr. Harrison possessed the Glock and ammunition in furtherance of his drug trafficking activities. The $9,227 were proceeds of Mr. Harrison's drug trafficking activity. Investigators issued *Miranda* advisements upon Mr. Harrison's arrest. Post-*Miranda*, Mr. Harrison saw the Glock firearm worn by the investigators and remarked, "my Glock's nicer, it's got that dick on it." Mr. Harrison, in this context, was referencing the extended magazine on his firearm.

Mr. Harrison also consented to a search of his rental vehicle. Inside the vehicle, investigators located in the center counsel a clear cellophane bag containing 3.2 grams of a mixture of 4-ANPP, heroin, and fentanyl and another clear cellophane bag containing approximately 8 grams of 4-ANPP and fentanyl. The two bags of fentanyl and heroin mixtures recovered from the center console of Mr. Harrison's vehicle were possessed with the intent to distribute their contents.

On the same day, hours before the search of Mr. Harrison, investigators executed a search and seizure warrant at 111 W. Heath Street, Apartment 513, Baltimore, Maryland. In that location, where Mr. Jerry was arrested, investigators located on the couch a Smith and Wesson M&P 9mm pistol, bearing serial number DVT5823, loaded with 16 rounds including one in the chamber. They also seized a Beretta .25 caliber pistol, bearing serial number B54043 and loaded with 5 rounds, from a kitchen drawer next to the refrigerator. After further search of the apartment, investigators located the following in the kitchen:

- A plastic container bearing a Mannitol label and containing a mixture of fentanyl and heroin weighing approximately 488 grams;
- Several clear plastic bags containing cocaine weighing a total of approximately 40 grams;
- A clear plastic bag containing a mixture of heroin and fentanyl weighing approximately 51 grams;
- A clear plastic bag containing cocaine base weighing approximately 28.1 grams;
- A sifter, two mixing bowls, a pestle, and Christopher Jerry's credit card with white powder residue; and
- A plastic bag containing a mixture of fentanyl weighing approximately 90 grams.

Additionally, investigators located a money counter at the top of the steps that led to the roof deck. At trial, expert testimony supported the jury's conclusion that the Defendant possessed heroin, fentanyl, cocaine mixtures with the intent to distribute them. Furthermore, an expert

provided testimony establishing that the firearm the Defendant possessed was possessed in furtherance of his drug trafficking activities.

## II.     GUIDELINES COMPUTATIONS

The government agrees with the calculations as set forth in the Presentence Investigation Report. Mr. Harrison's offense level for Counts One through Three is 34 based on the quantity of narcotics relevant to the convictions and grouping of closely related offenses pursuant to United States Sentencing Guidelines (U.S.S.G.) § 3D1.2(d). Counts One through Three group as follows: (a) Counts One and Two reflect conduct for which the offense level is determined largely based on the quantity of the substances involved, and (b) Counts Three embodies conduct that is treated as an adjustment to Count Two (and vice versa).

Count One involves a total converted weight of 1696 kilograms, based on the presence of approximately 630 grams of a fentanyl mixture, approximately 100 grams of a heroin mixture, and approximately 105 grams of a cocaine mixture. *See* U.S.S.G. § 2D1.1 cmt. 8(D). This would provide for a base offense level of 30. U.S.S.G. § 2D1.1(a)(5), §2D1.1(c)(5). This would be subject to a two-level enhancement for possession of a firearm in connection with the offense. U.S.S.G. § 2D1.1(b)(1). Another two-level enhancement applies based on the evidence that the defendants maintained a premise for the purpose of distributing controlled substances. U.S.S.G. § 2D1.1(b)(12). Because Count One provides for the involves the highest offense level of the grouped counts, the adjusted offense level for Counts One through Three is 34. U.S.S.G. § 3D1.3.

Because Mr. Harrison's criminal history is a category I, *see* PSR ¶ 32, the advisory guidelines range for the grouped counts is 151-188. A statutory minimum of ten years applies to Count One. 21 U.S.C. § 846; 21 U.S.C. § 841(b)(1(A)(vi).

Regarding Count Four, pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence is the minimum term of imprisonment required by statute—five years' imprisonment to be run consecutive to any other sentence. *See* 18 U.S.C. § 924(c); U.S.S.G. § 3D1.1(b)(1).

## III.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The Government believes 180 months' imprisonment, the mandatory minimum sentence that the Court must impose, is the appropriate sentence given the extensive nature of the drug trafficking and related conduct by Mr. Harrison.

The nature of the offense is very serious and warrants an equally serious sentence. During the conspiracy, Harrison, as the leader of this conspiracy, was responsible for distributing a significant amount of fentanyl and other narcotics. The harm created from such conduct cannot be understated. *See* "Fentanyl Safety Considerations", Maryland Occupational Safety and Health, *available at* https://www.dllr.state.md.us/labor/mosh/moshfentanylsafety.shtml (noting that "[f]entanyl is a powerful synthetic opioid analgesic that is similar to morphine but is 50 to 100 times more potent") (last accessed November 17, 2021). Fentanyl and other synthetic opioids account for more than half of the overdose deaths that result from illegal drug use in the United States. *See* "Fentanyl Drug Facts," National Institute on Drug Abuse, *available at*

https://www.drugabuse.gov/publications/drugfacts/fentanyl (noting that in 2017, 59% of opioid-related deaths involved fentanyl) (last accessed November 17, 2021). Given the amount of fentanyl involved in the conspiracy, Harrison and his co-conspirators put countless people at risk of overdose or death. The pain cuts more deeply in Baltimore, which has been grappling with a drug epidemic for years. The Court is no doubt aware of myriad effects of drug trafficking on individuals and their communities, whether those effects concern individual health or relate to violence that has been connected to drug trafficking. *See, e.g.*, *United States v. Carter*, 750 F.3d 462, 470 (4th Cir. 2014) (discussing the links between drugs and violence). Furthermore, the seriousness of the conduct is, no doubt, reflected by the mandatory minimum term imposed by Congress.

The seriousness is compounded when accounting for the presence of firearms. Such danger is borne out by the lives lost at the hands of people in the drug trade who decide to address problems on their own—rival drug dealers, innocent bystanders, children walking through their neighborhood, and sometimes the shooter himself. *See United States v. Moore*, 769 F.3d 264, 270 (4th Cir. 2014) (noting the role of firearms "as an enforcement mechanism in [the] dangerous transactional business" of drug trafficking). A single bullet could end these lives. This additional level of danger, beyond that inherent in the potent narcotics distributed here, should be considered in fashioning the appropriate sentence.

A sentence of 180 months is a very serious and substantial one for Mr. Harrison. Unfortunately, even after being the victim of a shooting, he took no pause in furthering the drug trade in and around Baltimore. His sentence should reflect the danger posed to countless others through his actions.

### IV.   CONCLUSION

Based on these and other §3553(a) considerations, the Government believes a total of 180 months' imprisonment is sufficient but not greater than necessary to accomplish the purposes of § 3553(a). In accordance with the Sentencing Guidelines, the Court should impose 120 months' incarceration on Counts One, Two, and Three, to run concurrently with one another, U.S.S.G. §§ 5G1.2(b)(c), and 60 months' incarceration for Count Four, to run consecutively to the other counts, U.S.S.G. § 5G1.2(a).

Very truly yours,

Erek L. Barron
United States Attorney

_____/s/_____
Christine Goo
Charles Austin
Assistant United States Attorneys

cc:   John Cox, Esq.
      Natalie Finegar, Esq.