# THE LAW OFFICE OF JOHN COX, P.A.
John E. Cox, Esquire*
217 North Charles Street, 3rd Floor
Baltimore, Maryland 21201
P: 410.385.2020/F:410.914-2109

November 19, 2021

<u>By PACER</u>
The Honorable Paul Grimm
United States District Court for the District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

  Re: *United States* v. *Davante Harrison*, Criminal No. CCB-19-0575

Dear Judge Grimm**:**

  We write to you on behalf of our client, Davante Harrison, who comes before the Court for sentencing after having been found guilty at a jury trial for conspiracy to distribute controlled dangerous substances, possession with intent to distribute heroin, possession of a firearm by a prohibited person, and possession of a firearm in furtherance of a drug trafficking crime. The statutory minimum sentence for Mr. Harrison is 15 years, which is 180 months. 21 U.S.C. § 841(b)(1)(A);18 U.S.C. § 924(c). The United States Sentencing Guidelines recommend a term of 151 to 188 months incarceration based on his offense level of 34 and criminal history category of I. The statutory minimum of 180 months is towards the upper range of Mr. Harrison's guidelines, and sufficiently meets the needs of sentencing under 18 USCS § 3553(a)(2). The Defendant struggles with an opioid addiction, and respectfully requests Your Honor to recommend him for placement in a facility with a Residential Drug Abuse Program (RDAP).

## Background

  Davante Harrison, age 27, was born in Baltimore and has lived in the area his entire life except for a brief period of time when he moved to California with his girlfriend to pursue opportunities in his music career. Mr. Harrison was born to Jerome Jefferson and Latrice Harrison, but was raised by his mother and lived with his sister, Destiny Harrison. Presentence Investigation Report, P.11 (hereinafter PSI). During his childhood, his mother habitually abused drugs but was eventually able to enter recovery and began working at the Department of Social Services. PSI, p.12. In the months leading up to his arrest, Mr. Harrison frequently checked on his mother's and sister's well-being, in addition to heavily assisting them financially. His mother passed away due to COVID-19 while Mr. Harrison was awaiting trial. PSI, p.11. Destiny watched each day of her brother's trial from the viewing room while caring for her infant child.

  Defendant attended Milford Mills Academy and graduated in 2012. PSI, p. 13. Mr. Harrison began his career in the music industry in 2013. He later moved out of his mother's

home at age 20, and is now a recognized professional rap artist who elected to manage himself without a record label to be fully engaged with his business. PSI, p.13. Mr. Harrison's music garnered the attention of recording industry executives and earned him a loyal regional fanbase. He is extremely close to a longtime girlfriend, Deana, and six-year-old daughter named McKensie. PSI, p.11. However, Defendant's young adult-life has been plagued by his significant addiction to opioids such as oxycodone, codeine and heroin.

## Defendant's History of Substance Abuse

Mr. Harrison has struggled with an opioid addiction for the past several years. PSI, p. 13. At age 20, he began using Percocet and codeine syrup. His usage and tolerance escalated to constantly searching for prescription pills as evidenced by text messages on his cell phone. At age 23, Defendant's addiction progressed to substituting pills for heroin when he was unable to locate them. His phone contains copious outgoing messages to various contacts for Percocet, often gathering a limited supply from multiple sources then repeating the process the following day.

Defendant's life was eventually nearly consumed by his addiction. Defendant expressed concerns about the amount of money spent to support his addiction via text messages on his phone that was obtained by the government. Friends asked him questions about opioids due to his extensive experience using them. Acquaintances sometimes sent Defendant pictures of pills and asked his opinion regarding whether they were counterfeit.The effects of such constant use were physically noticeable as well, his teeth became infected due to the amount of codeine syrup that he consumed. PSI, p.12. Despite the negative consequences, Defendant did not receive treatment until his incarceration. PSI, p.13.

Mr. Harrison sought drug treatment almost immediately upon his incarceration and continues to receive it. Defendant was arrested on November 25, 2019 and held without bail. Counsel obtained Mr. Harrison's medical records from DC Central Detention Facility, where he received treatment until his recent relocation. Defendant wrote "I am going through the worst withdrawals I need help please" on an inmate request slip on December 19, 2019. He was prescribed Promethazine and Loperamide to assist with digestion related opioid withdrawal. Mr. Harrison reported that he had been using heroin recently and typically snorted around .5 grams per day. He wrote that his motivation for treatment was "to get off heroin and stop the cravings and withdraw." Mr. Harrison was first prescribed Suboxone on August 17, 2020. He met with an addiction counselor in December, 2020 and indicated that he was still suffering night sweats and chills. The latest note on Defendant's medical chart summary, dated October 18, 2021, indicates that he is still prescribedSuboxone and uses a journal to express his thoughts and feelings.

## The Residential and Drug Abuse Program

The Defendant desires to further his recovery efforts after receiving placement, specifically the opportunity to participate in a comprehensive treatment program. The Bureau of Prisons is authorized to provide the Residential and Drug Abuse Program under 18 U.S.C 21, which states "that every prisoner with a substance abuse problem have the opportunity to participate in the appropriate substance abuse treatment…" 18 U.S.C 21 (e)(2)(B). Only select prisons offer the RDAP to their inmates.[1] In order to qualify, inmates must have a verified pattern of substance abuse within one year of their arrest, serve a sentence longer than 24 months, not have any cognitive or physical impairments that would make completion

---

[1] *Residential Drug Abuse Programs and Locations,* BUREAU OF PRISONS (Sept. 1, 2021), https://www.bop.gov/inmates/custody_and_care/docs/rdap_loc_09012021.pdf.

impossible and be eligible for to participate in a halfway-house.[2] The RDAP requires that inmates complete a 500-hour residential program, where they benefit from intensive programming including cognitive behavioral therapy (CBT). *Id.* Next, inmates are reintroduced into general population and receive follow-up services to aid in their recovery. The final phase of the program is transitional drug abuse treatment (TDAT), where the inmate lives at a halfway house and attends further programming. *Id.*

Many inmates are eligible for a sentence reduction of up to one year upon completing all three steps of RDAP.[3] However, The Federal Bureau of Prisons does not allow inmates convicted of a crime involving a weapon to receive the sentence reduction. *Id.* Mr. Harrison does not qualify for the sentence reduction, but placement at a facility that offers RDAP and a recommendation from Your Honor would allow him the possibility of receiving the most comprehensive addiction treatment currently available through the Federal Bureau of Prisons.

### 180 Months Incarceration Meets the Needs of Sentencing Under U.S.C. § 841

The first factor the court considers when determining the need for the sentence imposed is whether it reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. 18 USC § 3553(a)(2)(A). The Defendant was found guilty of serious offenses that significantly harm the community. However, Mr. Harrison will spend most of his young adulthood in custody given the mandatory fifteen year sentence under U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 924(c). Such long-lasting consequences are, at minimum, sufficient to justly reflect the seriousness of the crimes for which he committed.

Another goal of sentencing is to adequately deter the Defendant and others from criminal conduct. 18 USCS § 3553(a)(2)(B). Mr. Harrison's situation is well known to his listeners and his trial received significant press coverage.[4] Fifteen years of incarceration will have a dramatic impact on Mr. Harrison's life, and others aware of his sentence are unlikely to be more deterred by a sentence higher than the mandatory minimum.

Third, the court considers whether the sentence protects the public from the defendant committing further crimes. 18 USC § 3553(a)(2)(C). As previously stated, a 27-year-old man that receives 15 years will give up a considerable amount of his life to incarceration. Mr. Harrison will emerge from his sentence as a middle-aged adult much more mature due to the sheer time of the mandatory sentence. Sentencing Mr. Harrison to any time over the 15-year mandatory minimum is unlikely to have any impact on whether he would reoffend.

Fourth, the court looks at whether the sentence will adequately rehabilitate the defendant. 18 USCS § 3553(a)(2)(D). Mr. Harrison will be able to avail himself to countless programs within the facility where he is placed over the course of fifteen years. His recovery has already begun but he will also have more than enough time to complete extensive addiction treatment, including RDAP.

### Conclusion

---

[2] Federal Bureau of Prisons, P5330.11, *Psychology Treatment Program* (2009).
[3] Federal Bureau of Prisons, P5331.02, *Early Release Procedures Under 18 U.S.C* § 3621(e) (2009).
[4] Justin Fenton, *Baltimore Rapper YGG Tay Convicted on All Drug and Weapon Charges in Federal Trial,* THE BALTIMORE SUN (Aug. 20, 2021).

The aforementioned factors do not necessitate a sentence over the statutory minimum of 15 years. Mr. Harrison will miss his current career, his daughter's childhood, and the countless other experiences that would occur for a young adult in society. However, after 15 years he would be released when his daughter is a young adult herself. He would also still be able to find a meaningful career, whether it's continuing in the music industry or a different path. Mr. Harrison respectfully requests this Court impose the minimum sentence as required by U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 924(c) and consider recommending him for placement at a facility that offers the Residential Drug and Alcohol Treatment.

Sincerely,

John Cox and Natalie Finegar

By: /s/ John E. Cox
     /s/ Natalie A. Finegar

**Enc.**
CC AUSA Christine Goo